UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY SMITH,

    Plaintiff,

v.

THE KROGER CO.,
a foreign corporation, and
THE KROGER CO. OF MICHIGAN,
a Michigan corporation,

    Defendants.

Case No.
Judge:
Magistrate Judge:

---

Zachary B. Mack (P62742)
Attorney for Plaintiff
Salvatore Prescott Porter & Porter, PLLC (*Of Counsel*)
105 East Main Street
Northville, Michigan 48167
Tele: (248) 679-8711
Fax:  (248) 773-7280
Email: mack@spplaw.com

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

---

Plaintiff, by and through his undersigned attorney, and for his Complaint against Defendants states and alleges the following:

**Jurisdiction, Parties, and Venue**

1. Plaintiff Timothy Smith is an individual residing in Waterford, Michigan, within the jurisdiction of this Court.

2. Defendant The Kroger Co. is a foreign corporation that, upon information and belief, owns grocery stores throughout the state of Michigan, including Kroger Store #675 in Waterford, Michigan where the substantial events of this action took place.

3. Defendant The Kroger Co. of Michigan is a Michigan corporation that, upon information and belief, is an affiliate of The Kroger Co., and which operates The Kroger Co.'s grocery stores, including Store #675 in Waterford, Michigan where the substantial events of this action took place.

4. This action is brought pursuant to the Family and Medical Leave Act of 1993, 29 USC § 2601, *et seq* (hereinafter "FMLA").

5. This Court has jurisdiction over this action pursuant to 28 USC § 1331 (federal question jurisdiction) and 29 USC § 2617(a)(2) (FMLA).

6. Venue is proper in this Court under 28 USC § 1391 because the substantial part of the events giving rise to this claim occurred in this judicial district, at Kroger Store #675 – Plaintiff's former and last place of employment with Defendants.

7. Declaratory, injunctive and other appropriate relief is sought pursuant to each aforementioned Act.

## General Allegations and Background

8. Plaintiff began his employment with Defendant(s) in or about April of 1994.

9. Plaintiff was terminated by Defendant(s) in February of 2020.

10. Plaintiff was employed by Defendant(s) for over 12 months prior to Plaintiff's termination.

11. At all relevant times, Defendant(s) employed more than 50 employees at Plaintiff's work site or, alternatively, within a 75 mile radius of the location of Plaintiff's work site, for the requisite amount of time set forth in 29 USC § 2611.

12. Plaintiff worked more than 1250 hours for the Defendant(s) in the 12 months prior to his termination.

13. Plaintiff last held the position of Night Shift Crew Leader/Night Stock Manager at Defendants' Waterford, Michigan Store #675.

14. During Plaintiff's employment with Defendants, Plaintiff began experiencing significant headaches and visual problems.

15. At one point Plaintiff was diagnosed with ocular migraines, which also affected Plaintiff's ability to see.

16. Plaintiff's doctor(s) performed multiple evaluations and diagnostic testing, prescribed medication(s), and the condition required multiple follow-up visits.

17. In 2018 Plaintiff eventually requested and was granted intermittent FMLA leave for his serious health condition.

18. Plaintiff exercised his rights under the FMLA in 2018, took time off from work under the FMLA, and ultimately exhausted his leave entitlement in or about April of 2019.

19. Plaintiff requalified for FMLA leave, and in June 2019 requested additional intermittent leave, which was approved for the period of June 17, 2019 through June 16, 2020.

20. During this period of time, Plaintiff's Store Manager at Kroger Store #675 was Ken Skowron.

21. Mr. Skowron was informed of the approval of Plaintiff's FMLA leave, and was aware of Plaintiff's absences under the FMLA.

22. In fact, Mr. Skowron signed multiple "Family & Medical Leave (FML) Intermittent / Reduced-Scheduled Leave Update Sheets" for Plaintiff toward the end of 2019, which are contained in Plaintiff's personnel file.

23. During this same time, Mr. Skowron negatively commented about Plaintiff's absences, and appeared to overly scrutinize Plaintiff's work performance.

24. At one point during this same time period, Mr. Skowron suggested that Plaintiff would be bumped down to part-time because of not working enough hours.

25. Plaintiff did not desire to reduce his employment to part-time.

26. Around the same time it became apparent to Plaintiff that his Store Manager, Mr. Skowron, was actively engaged in a concerted effort to have Plaintiff's employment terminated.

27. For example, Plaintiff's Store Manager would not discipline, and seemingly encouraged, verbal abuse of Plaintiff by Plaintiff's subordinates.

28. On one or more occasions, Plaintiff was referred to as a "fucking faggot" by Plaintiff's subordinate Terry Bailey.

29. Despite being specifically informed of this fact, Mr. Skowron did not discipline the offending employee.

30. Instead, and contrary to the direction of upper management, Mr. Skowron continued to put Plaintiff in contact with this employee.

31. Even when one employee wrote a statement confirming this type of atrocious verbal abuse, the statement was apparently changed by that employee upon pressure by Mr. Skowron.

32. On or about January 26, 2020 Plaintiff was accused by Mr. Skowron of allegedly being insubordinate.

33. During that same interaction, Plaintiff's subordinate, Terry Bailey, claimed Plaintiff was a racist without any support, and in a defamatory manner.

34. For no apparent reason, Mr. Skowron repeated the allegation to upper management, i.e. that Plaintiff was a racist.

35. In the same communication to upper management, Mr. Skowron even concocted a further defamatory allegation that Plaintiff was previously "removed from [Kroger] for calling a black person the N-word".

36. There was no reason for Mr. Skowron to repeat and/or engage in independent defamatory communications regarding Plaintiff, other than to attempt to encourage and/or justify the unlawful termination of Plaintiff's employment.

37. As a result of alleged incidents that took place on January 26, 2020, Plaintiff was terminated.

38. Shockingly, the employee who defamed Plaintiff by claiming he was racist was not disciplined by Defendant. Rather, and according to the employee, he was given time off with pay – almost as a reward for getting Plaintiff terminated.

39. Plaintiff was not insubordinate on January 26, 2020, and the allegations Defendants relied upon to terminate Plaintiff's employment were absolutely false.

40. The individual who made the decision to terminate Plaintiff's employment was Joe Gusman – the same individual to whom Mr. Skowron communicated with, and referred to Plaintiff as being a racist and "calling a black person the N-word".

41. Mr. Gusman has testified in an unrelated case that he was the sole decisionmaker concerning Plaintiff's termination.

6

42. However, Mr. Gusman also testified that he did not have personal knowledge of the allegations supporting the decision to terminate Plaintiff's employment, and only relied upon allegations and information provided to him by Mr. Skowron.

43. Moreover, Mr. Skowron has admitted in sworn testimony that he had no personal knowledge of the allegations leading to Plaintiff's termination, including the alleged insubordination.

44. Mr. Skowron has a history of signing/creating false statements concerning Plaintiff's employment with Defendants, in an effort to have Plaintiff written-up, suspended, and/or terminated from Defendants.

45. Mr. Skowron, upon information and belief, has also pressured other co-workers of Plaintiff's to write and/or change statements concerning Plaintiff and Plaintiff's work performance.

46. Defendants terminated Plaintiff's employment in whole, or in substantial part, because of Plaintiff's FMLA protected absence, his exercise of rights afforded by the FMLA, and/or his attempts to exercise his rights afforded by the FMLA.

47. Defendants did not act in good faith toward Plaintiff, and likewise did not act under a reasonable belief that they were complying with the FMLA.

### Count I - Violations of the FMLA, 29 USC § 2601, *et seq.*

48. Plaintiff repeats and re-alleges the above paragraphs as if fully set forth

herein.

49. Plaintiff qualified as, and was an eligible employee of the Defendants under the FMLA and the regulations promulgated there under.

50. The Defendants qualified as, and were Plaintiff's employer under the FMLA and the regulations promulgated there under.

51. At all times relevant hereto, Plaintiff was qualified for FMLA leave.

52. Plaintiff's condition that required the aforementioned intermittent leaves of absence constituted a "serious health condition" within the meaning of the FMLA.

53. Plaintiff provided Defendants with adequate, timely and sufficient notice under the circumstances of his need to take time off under the FMLA.

54. Plaintiff was approved for intermittent leave under the FMLA prior to his termination, and in fact took leave under the FMLA on multiple occasions.

55. Defendants engaged in conduct prohibited under the FMLA, and the regulations promulgated there under, including but not limited to improperly terminating Plaintiff in violation of the FMLA, and improperly utilizing FMLA protected absence(s) or inability to work as a negative factor in the decision to terminate Plaintiff's employment.

56. As a direct and proximate result of Defendants' violations of the FMLA and the regulations promulgated there under, Plaintiff has incurred all damages available at law, both past, present, and into the future, and including all damages

set forth in 29 USC § 2617, including but not limited to lost wages, available overtime wages, the value of lost employment benefits, interest, costs of litigation, attorney fees and liquidated damages equal to the sum set forth in 29 USC § 2617.

57. Plaintiff hereby seeks recovery of, and is entitled to recovery of, all such damages incurred, and those that will be incurred in the future (including front pay).

58. In the event the Court deems reinstatement to be a remedy more appropriate than front pay to compensate for future damages, then Plaintiff, in the alternative, hereby seeks an injunctive order compelling Defendants to reinstate Plaintiff to his former position, and to retroactively restore Plaintiff's seniority and retirement benefits and rights, if any, as well as all benefit rights. Even if the Court orders such reinstatement, Plaintiff nevertheless is entitled to recover, and hereby seeks recovery of all other damages set forth above, including back pay, the value of lost benefits, costs, interest, etc.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in Plaintiff' favor, against Defendants, and to award all available damages and liquidated damages, interest, and equitable relief, including the costs and attorney fees incurred in having to litigate this matter.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury in this action.

Respectfully submitted:

/s/Zachary B. Mack
Zachary B. Mack (P62742)
Attorney for Plaintiff
Salvatore Prescott Porter & Porter, PLLC (*Of Counsel*)
105 East Main Street
Northville, Michigan 48167
Tele: (248) 679-8711
Fax:  (248) 773-7280
Email: mack@sppplaw.com